**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clinton Dale Harris, | No. CV-22-00462-TUC-MSA |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

    Plaintiff Clinton Harris seeks judicial review of an unfavorable decision issued by the Commissioner of Social Security Administration. The matter has been fully briefed. For the following reasons, the Commissioner's decision will be affirmed.

## Background

    Plaintiff is 56 years old. (AR 277.) He attended school through the twelfth grade, although he did not graduate. (AR 36.) He worked as a concrete truck driver until 2012, when he lost his commercial driver's license due to a failed health examination, and then did various other jobs until he quit working in 2015. (AR 36–38, 335.)

    In 2017, Plaintiff filed an application for disability insurance benefits. (AR 277.) To obtain benefits, he had to prove that he became disabled before December 31, 2019 (his date last insured). (AR 14.) He alleged that he was disabled because of hypertension, diabetes, a hernia, osteoarthritis, and recurring cellulitis in his legs. (AR 36, 42, 334.)

    Plaintiff's application was denied initially and on reconsideration, so he requested a hearing before an administrative law judge (ALJ). (AR 56, 66, 82.) Plaintiff appeared at

a hearing in October 2019, but the matter was continued because he was unrepresented and had submitted little evidence for the record. (AR 27–30.) The next hearing occurred in June 2021. (AR 34.) Plaintiff, who appeared with counsel, testified that his ability to walk was limited due to severe swelling and pain in his legs, and that his problems had started in February 2015 after he had a decompressive fasciotomy of his right leg (a surgical cutting designed to relieve pressure). (AR 36–37, 41–42.) He testified that he had had further problems following a toe amputation in October 2020 (after the date last insured). (AR 42.) The ALJ questioned Plaintiff's testimony because it did not align with what he had told his doctors in the past (e.g., in March 2018, he reported that he walked four miles every day). (AR 43–44.) In response, Plaintiff asserted that he could not recall making such statements, and he maintained that it was "very painful to walk." (AR 44.)

After the hearing, the ALJ issued a written decision following the five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (AR 15.) At step two, the ALJ found that Plaintiff had three medically determinable impairments (obesity, diabetes, and lower extremity cellulitis), but that none of them was severe. (AR 16.) Accordingly, the ALJ ended the analysis and entered a finding of "not disabled." (AR 19.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1.) This lawsuit followed.

**Legal Standard**

The Commissioner's decision will be affirmed if it is supported by substantial evidence and free of legal error. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996)). "Substantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (alteration in original) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

. . . .

. . . .

**Discussion**

Petitioner raises three challenges to the ALJ's decision. First, he argues that the ALJ erred in finding that he does not have a severe impairment. Second, he argues that the ALJ erred in rejecting his symptom testimony. His symptoms are relevant to whether his impairments are severe, 20 C.F.R. § 404.1529(d)(1), so these issues will be addressed in reverse. Third, he argues that the ALJ erred in not fully developing the record. As discussed below, none of these arguments has merit.

**I.    The ALJ did not err in rejecting Plaintiff's symptom testimony.**

At his hearing, Plaintiff testified that he had "always" had problems walking due to "excruciating pain" from leg swelling and blisters. (AR 42.) He clarified that his problems began in February 2015 after he had a decompressive fasciotomy of his right leg. (AR 42.) When the ALJ inquired whether Plaintiff had "been able to walk two miles" at any point since his surgery, Plaintiff answered "no" and asserted that he was "lucky to walk 500 feet." (AR 42–43.)

The parties agree that the ALJ could reject Plaintiff's testimony only for "specific, clear and convincing reasons." *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). The ALJ found that Plaintiff's testimony was (1) unsupported by, and in some respects inconsistent with, the objective medical evidence, (2) inconsistent with prior statements he had made about his symptoms, and (3) inconsistent with his daily activities. (AR 18–19.) These findings are supported by substantial evidence. They also constitute clear and convincing reasons. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (stating the ALJ may discount testimony based on inconsistent medical evidence); *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (inconsistent prior statements); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040, (9th Cir. 2007) (inconsistent daily activities).

First, the ALJ cited evidence indicating that Plaintiff's leg issues were not as severe as alleged. (AR 18.) For instance, the evidence showed that Plaintiff's cellulitis resolved with antibiotics and that he was often observed without edema (swelling caused by an

accumulation of fluid). (AR 390 (August 2012); AR 468, 471, 473 (February 2015); AR 463 (March 2015); AR 453, 458 (April 2015); AR 436 (January 2016); AR 431 (March 2016); AR 910 (March 2018).) It also showed that, during the disability period, Plaintiff did not have osteomyelitis (a type of bone infection) in his legs. (AR 479 (January 2016); AR 908 (March 2018).) Further, as the ALJ noted, there was "no evidence" that Plaintiff's cellulitis caused "any significant functional limitations . . . on [his] activities." (AR 18.) In fact, one of the cited records indicates the opposite: in January 2016, Plaintiff had no motor or sensory deficits on examination despite swelling in his right leg. (AR 941.) The ALJ rationally found that the foregoing evidence did not support Plaintiff's testimony about severe and persistent leg pain. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (upholding the ALJ's finding that the claimant's pain testimony was inconsistent with his normal physical examinations).

Second, the ALJ found that Plaintiff's testimony was inconsistent with statements he had made during a 2016 surgery consultation. (AR 19.) Recall that, during his hearing in 2021, Plaintiff testified that he experienced "excruciating pain" from leg swelling and blisters. (AR 36, 42.) At the 2016 consultation, he reported four days of "progressively increased" swelling in his right leg, which had resulted in the "development of a blister." (AR 939.) Given his hearing testimony, one would have expected Plaintiff to report significant pain at the consultation. Instead, he "denied any pain on walking or movement," "denied pain after walking," "denied any weakness or numbness," and "denied resting pain in his leg." (AR 939.) The ALJ rationally discounted Plaintiff's testimony based on that inconsistency. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (upholding the ALJ's finding that Plaintiff's testimony and prior statements were inconsistent).

Third, the ALJ found that Plaintiff's testimony was inconsistent with his daily activities. (AR 18–19.) At the hearing, Plaintiff testified that he was "lucky to walk 500 feet" after his February 2015 surgery. (AR 42–43.) In March 2018, however, Plaintiff reported "walk[ing] about 2 miles in the morning and in the evening every day." (AR 909.) The ALJ rationally found that that level of activity contradicted Plaintiff's testimony about

severe walking restrictions. *See Smartt*, 53 F.4th at 500 (upholding the ALJ's finding that the claimant's "self-reported activities were inconsistent with the constant '10/10' pain she described").

This reasoning satisfies the clear-and-convincing standard. In arguing otherwise, Plaintiff challenges only the ALJ's third reason (regarding his ability to walk four miles per day). The Court would uphold the ALJ's decision based on the combination of the first and second reasons, so Plaintiff's failure to address them leaves his challenge deficient. Moreover, as discussed below, Plaintiff's attacks on the third reason are meritless.

Plaintiff offers several arguments as to why the March 2018 treatment note should be disregarded. He argues that "[t]here is no other evidence stating [he] was walking" four miles per day, so "[i]t is reasonable to believe that [the note] was either a misunderstanding on the part of the intern, the records were mixed with another person's file, or [he] was referring to a time before his physical demise." However, none of those suggestions is reasonable. The report is signed by Lawrence Deluca, M.D., whose title is "Associate Professor of Emergency Medicine." (AR 911.) There is no indication that an "intern" made the note, let alone that an "intern" misunderstood what Plaintiff said. Next, the report very clearly pertains to Plaintiff, not some unknown third party: Plaintiff's name is on it, it describes his specific medical conditions, and it mentions his history as a truck driver. Finally, the context of the report makes clear that Plaintiff was describing his then-present activities. (AR 909 ("*Currently* he has had chills and sweats . . . . Patient denies any *recent* travel. He *has* 3 dogs and a cat at home. He *walks* about 2 miles in the morning and in the evening every day." (emphases added)).)

Next, Plaintiff argues that the note should be disregarded because if he "had been able to walk four miles a day, he would have passed his health exam [in 2012] and been able to keep his commercial driver's license." That inference is not supported by the record. More than six years separate the loss of Plaintiff's license and the March 2018 note. As previously explained, the medical records from that period indicate that Plaintiff's cellulitis resolved with treatment and, more importantly, that Plaintiff retained the ability to walk

without pain even when he had symptoms. Plaintiff's failed health examination in 2012 says nothing about his ability to walk four miles a day in 2018.

Plaintiff also says that if he could walk four miles a day, "[i]t is . . . reasonable to believe that this level of physical exertion would [have been] noted [more than once] in the records which span from 2012 to 2020." This argument overlooks the applicable legal standard. Plaintiff cannot obtain relief simply by offering his own rational interpretation of the record; he must show that the ALJ's interpretation is *irrational*. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). He cannot do so here. As previously explained, the record supports the ALJ's finding that Plaintiff's testimony was an understatement of his ability to walk. That rational interpretation of the record must be upheld.

Plaintiff next argues that the ALJ erred in giving no weight to the fact that he had a toe amputated in 2020. "It is reasonable to assume," he says, "that he was not physically able to walk four miles a day" after that. However, the ALJ did not err. Plaintiff had to show that he became disabled *before* his date last insured, which was December 31, 2019. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). The ALJ observed that, in October 2020, Plaintiff's left toe was amputated due to osteomyelitis. (AR 18, 892.) The ALJ also observed that, a few days before the surgery, Plaintiff reported that he had not previously had any significant issues with his left leg. (AR 18, 603.) Based on these facts, the ALJ rationally found that the amputation occurred after the date last insured because of osteomyelitis that developed after the date last insured. Plaintiff no doubt is affected greatly by the loss of his toe, but that is not relevant to his disability claim.

Plaintiff argues that the ALJ needed an on-point medical opinion to find that the osteomyelitis developed after the date last insured, and that the ALJ overstepped his role by deciding the issue without such an opinion. The Court disagrees. ALJs are allowed to make reasonable inferences. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quoting

*Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Here, the ALJ made a reasonable inference based on the date of the amputation and Plaintiff's assertion that he had not had significant issues before then. The ALJ did not "play doctor."

Next, Plaintiff says that the ALJ did not divide the evidence into pre- and post-date last insured, and that it would be an improper post hoc rationalization to do so now. Plaintiff is wrong. The ALJ's decision shows that the ALJ was aware of the date last insured and its significance.[1] Plaintiff's last criticism appears in a footnote: "It is noteworthy the ALJ refers to Mr. Harris's statements at the hearing as a 'Hr'g Test'. The social security process is non adversarial [sic]. The ALJ's examination is 'inquisitory' not adversarial." The ALJ's abbreviation of "hearing testimony" as "Hr'g Test." does not show that the ALJ acted in an adversarial capacity. Plaintiff's suggestion otherwise is puzzling.

The ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony. The Court rejects Plaintiff's claim of error.

## II.   The ALJ did not err in finding that Plaintiff lacked a severe impairment.

At step two, the ALJ must determine whether the claimant has a "severe medically determinable" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). This is a two-part inquiry. The claimant must first show that his impairment is "medically determinable," meaning it has been "established by objective medical evidence from an acceptable medical source." *Id.* § 404.1521. He must then show that his medically determinable impairment is "severe." *Id.* An impairment is severe if it "significantly limits" the claimant's "physical or mental

---

[1] The ALJ wrote:
> Physical exams indicate the claimant's gait and sensation were not compromised *during the period at issue*. There is no evidence that any significant functional limitations were placed on the claimant's activities. Considering the overall evidence *prior to the claimant's date last insured for benefits*, cellulitis was a nonsevere impairment.
>
> *After the period at issue* and as of October 2020, the claimant reported that he had not had any significant issues with the left leg prior to current swelling and redness. A blister on the toe was found at that time. Amputation of the left second toe was necessary in November [sic] 2020 due to a finding of osteomyelitis.

(AR 18 (emphases added) (internal citation omitted).)

ability to do basic work activities." *Id.* § 404.1520(c).

Plaintiff alleged that he was disabled because of hypertension, diabetes, a hernia, osteoarthritis, and recurring cellulitis in his legs. (AR 36, 42, 334.) Of those, the ALJ found that diabetes and cellulitis were medically determinable. (AR 16.) The ALJ also added obesity as a medically determinable impairment. (AR 16.) The ALJ then found that none of Plaintiff's medically determinable impairments was severe. (AR 16.) As discussed below, these findings are supported by substantial evidence.

The ALJ observed that Plaintiff was first treated for hypertension and a hernia in October 2020, after his date last insured, and that there was no indication that Plaintiff was limited by those impairments during the disability period. (AR 17.) The ALJ also observed that Plaintiff had no history of arthritis as of August 2016. (AR 17, 971.) While Plaintiff was diagnosed with right-wrist arthritis at that time, the ALJ noted that his wrist was "greatly improved with no swelling and minimal pain" a few months later. (AR 17, 422.) The ALJ also observed that, in March 2018, Plaintiff denied back pain, joint pain, and joint swelling. (AR 17, 913.) Given this evidence, and the lack of evidence indicating that Plaintiff was limited by hypertension, hernias, or arthritis, the ALJ rationally found that those impairments were not medically determinable. Plaintiff does not argue otherwise.

The ALJ's evaluation of Plaintiff's medically determinable impairments was also rational. As previously explained, the evidence indicates that Plaintiff's cellulitis resolved with treatment and did not significantly limit his ability to ambulate. As for diabetes, the ALJ observed that Plaintiff's diabetes "was without complications and without long-term, current use of insulin." (AR 18, 413.) The ALJ also pointed to evidence that Plaintiff's diabetes was "controlled with diet" in both 2016 and 2021, and that Plaintiff denied common symptoms of diabetes during the disability period (cold and heat intolerance, extreme thirst and hunger, vision changes, and extremity numbness). (AR 18, 419, 553.) Finally, as to obesity, the ALJ correctly found that there was "no clinical evidence" that Plaintiff's obesity had "any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, cardiac, or mental functioning." (AR 17.) Further, the evidence cited throughout

the ALJ's decision documents numerous physical examinations that were essentially normal. (*See, e.g.*, AR 452–53 (April 2015); AR 421–22 (October 2016); AR 415–16 (December 2016); AR 913 (March 2018).) Based on the foregoing, the ALJ rationally found that Plaintiff's cellulitis, diabetes, and obesity were not severe.

In arguing that the ALJ erred, Plaintiff fails to engage with the evidence discussed above. He argues that "[a]lthough the ALJ identifies medically determinable impairments and is required to continue his analysis because he finds non disability [sic] he does not. . . . . As such, the ALJ made a Step Two error." Plaintiff's phrasing is confusing, but he seems to equate medical determinability with severity. In other words, Plaintiff argues that if an impairment is medically determinable, then it necessarily must be severe as well (because only then would the ALJ be "required to continue his analysis"). That is legally incorrect. Medical determinability and severity are distinct concepts. This means that an impairment can be medically determinable but not severe. *See* 20 C.F.R. § 404.1521 ("After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe."). That is what the ALJ found as to Plaintiff's cellulitis, diabetes, and obesity, and that finding is supported by substantial evidence.

Next, Plaintiff argues that he "met his burden of proof as the Commissioner already determined there were two severe impairments before the date of [sic] last insured." The determinations to which Plaintiff refers were made in 2018 at the initial and reconsideration levels, where the state-agency doctors found that Plaintiff had two severe impairments (chronic venous insufficiency and obesity). (AR 53, 63.) Implicit in Plaintiff's argument is that the ALJ was bound to those earlier findings when he issued his decision in 2021. That is legally incorrect. The ALJ "must consider" the state-agency doctors' findings, but he is "not required to adopt" them. 20 C.F.R. § 404.1513a(b)(1). Here, the ALJ complied with the regulation when he discussed the doctors' opinions and found them unpersuasive. (AR 19.) Plaintiff has not developed any argument that the ALJ's evaluation of the opinion evidence was defective. Any such argument is now waived.

Third, Plaintiff argues (indirectly) that his osteomyelitis was severe because it

potentially satisfied the social security listing for that impairment. However, as explained in the preceding section, the ALJ reasonably found that Plaintiff's osteomyelitis developed after the date last insured. That impairment is not relevant to Plaintiff's claim.

Substantial evidence supports the ALJ's finding that Plaintiff lacked a severe medically determinable impairment. The Court rejects Plaintiff's claim of error.

**III.    The ALJ did not err in developing the record.**

The ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). This duty "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).

The ALJ's duty to develop the record was not triggered in this case. As discussed throughout this Order, the evidence indicates that Plaintiff's impairments were controlled with treatment and did not cause any significant limitations. There is nothing ambiguous about that evidence, and, given the consistency of the evidence from the disability period, the record was adequate to make a determination. Furthermore, even if the ALJ's duty were triggered, the ALJ satisfied his obligation by continuing Plaintiff's hearing from October 2019 to June 2021 so that Plaintiff could hire an attorney and obtain his medical records. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (stating that the "ALJ may discharge [his] duty in several ways, including . . . continuing the hearing"). The ALJ was not required to do more.

To argue otherwise, Plaintiff points out that the ALJ highlighted the absence of certain evidence. First, the ALJ remarked that "[n]one of [Plaintiff's] medical or other providers ha[d] completed a medical source statement of [his] ability to perform work-related activities." (AR 19.) However, that mere observation does not establish that the record was inadequate. The providers' treatment notes were before the ALJ, and they were clear enough for the ALJ to make a decision. *See McLeod v. Astrue*, 640 F.3d 881, 884 (9th

Cir. 2011) (holding "[t]he ALJ had no duty to request more information from [the claimant's] physicians" because "substantially all of their medical records . . . were before the ALJ" and "[t]here was nothing unclear or ambiguous about what they said"). Second, the ALJ rejected the state-agency doctors' opinions because, according to the doctors, Plaintiff had not submitted enough evidence for them to make a decision. (AR 19.) The ALJ remedied that issue (which Plaintiff caused by ignoring the agency's requests) by giving Plaintiff another chance to obtain and submit his records. Plaintiff did obtain and submit those records, and his attorney confirmed at the second hearing that the record was complete. (AR 35.)

The ALJ did not fail to develop the record. The Court rejects Plaintiff's claim of error.

## Conclusion

The Commissioner's decision is supported by substantial evidence and free of legal error. Therefore,

**IT IS ORDERED** that the Commissioner's decision is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 13th day of September, 2023.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge